IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELE MILLAR<br>203 Canterbury Court<br>Warrington, PA 18976 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : | No. |
| v. | : <br> : | |
| NORTHEAST SNF OPERATIONS, LLC<br>d/b/a BRYN MAWR VILLAGE<br>773 E. Haverford Road<br>Bryn Mawr, PA 19010 | : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : | |

## CIVIL ACTION COMPLAINT

Michele Millar (hereinafter "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Northeast SNF Operations, LLC d/b/a Bryn Mawr Village (*hereinafter* "Defendant") for violations of the False Claims Act ("FCA" - 31 U.S.C. § 3730(h)(1)), Pennsylvania common law(s) and the Older Adults Protective Services Act ("OAPSA").

2. Plaintiff asserts, *inter alia*, that she was unlawfully terminated from her employment for refusing to engage in illegal activities, specifically commit illegal billing fraud, and objecting to and reporting Defendant's illegal efforts to knowingly submit false billing claims to the United States Federal Government. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

1

**JURISDICTION AND VENUE**

3. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress of such federal statutes. Plaintiff's state law claims arise out of the same common nucleus of operative fact(s), rendering supplemental jurisdiction of state claims appropriate.

4. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

5. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania for this action.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. North East SNF Operations, LLC d/b/a Bryn Mawr Village ("Defendant") is a foreign limited liability corporation provides long term and senior-living care throughout Pennsylvania.[1]

---

[1] For notice purposes, it is highly likely that following initial discovery Plaintiff will move to amend her lawsuit to include other entities that would statutorily be considered her single, joint and/or integrated employer(s). She lacks

2

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Defendant provides medical care to older adults, including short-term subacute care featuring a wide range of physical, occupational, orthopedic and speech therapy, adult daycare programs, independent living, personal care, dementia and memory support care, and long-term care.

12. Plaintiff is a licensed Occupational Therapist ("OT") with a long and stellar history of professional experience in long term care of older adults.

13. On or about July 24, 2025, Defendant hired Plaintiff as the Director of Rehabilitation ("DOR") and employed her in that capacity for approximately one (1) month until unlawfully terminating her on or about August 29, 2025, as discussed in further detail herein.

14. Plaintiff reported primarily to Defendant's Administrator/Executive Director, Yoni Nussbaum ("Nussbaum"), and Defendant's Regional Director of Operations, Michaela McCaskell ("McCaskell").

---

familiarity with the current corporate structure, but after substantial research, there appears to be numerous other entities affiliated with Defendant (and/or operating Defendant).

## **DEFENDANT'S FRAUDULENT BILLING SCHEMES**

15. Throughout her employment, Plaintiff repeatedly complained to Defendant's management that therapy employees were engaging in negligent and/or fraudulent billing schemes in an effort to extract more revenue from Medicare and/or Medicaid.

16. Despite Plaintiff's repeated complaints and objections, Defendant's management intentionally allowed these fraudulent billing practices to continue.

17. By way of illustration only, Defendant's Occupational Therapists ("OTs") and Physical Therapists ("PTs") were permitted and/or directed to "co-treat" patients at the same time without documenting clinical necessity or patient benefit as required by Medicare regulations.

18. Essentially, co-treatment is when both the OT and PT see the patient together in one session, instead of providing the patient with individual sessions with each therapist

19. While Medicare regulations provide for co-treatment (and separate billing) *in limited circumstances*, such as when there is a *documented medical need*, they prohibit co-treatment when it is done solely for convenience or productivity (as it was being utilized at Defendant).

20. The reason co-treatment is only allowed in certain circumstances is because the patient is receiving less therapy sessions than medical providers are prescribing.

21. However, Defendant's OTs and PTs were not properly labeling treatments as "co-treatment" and failed to identify that they were treating patients with other therapists. Essentially, each therapist was billing as though they had treated the patient individually so Defendant could receive higher payments from Medicare while doing less actual work.

4

22. Defendant's management also insisted on OTs and PTs hitting certain "productivity quotas." At month's end, OTs and PTs would frequently retroactively alter session lengths and billing codes to meet Defendant's productivity requirements.

23. Defendant was further engaging in fraud by allowing and directing OTs and PTs to bill Medicare for full session lengths (*e.g.* 45 minutes) despite spending significantly less time (often only 20-30 minutes) with the patient.

24. Further, despite explicit instructions from Plaintiff, OTs and PTs would rarely, if ever, do Point of Service documentation (meaning documenting while with the patient) and instead retroactively "document" their services provided.

25. This led to OTs and PTs frequently billing for time not actually spent with the patients. Plaintiff complained and objected to these practices to Defendant's management as it would frequently lead to overbilling.

26. Even after Plaintiff complained that these practices were unlawful, Defendant's management continued to allow OTs and PTs to add vague phrases such as "poor endurance/safety" in a blatant attempt to justify the improper co-treatments.

27. Not only did these fraudulent practices result in fraudulent and inaccurate billing to Medicare, but it also compromised patient safety and health as patients were not receiving the care required or prescribed by their medical providers.

28. **The end result was Defendant's patients were receiving half the care that was actually prescribed to them, and Defendant was billing for services never performed.**

**DEFENDANT'S NEGLIGENT PATIENT CARE**

29. Throughout her employment, Plaintiff also repeatedly complained to Defendant's management about negligent treatment of older adult patients.

30. Due to Defendant's aforementioned fraudulent billing practices, patients were not receiving the treatment or services as prescribed by their treating medical providers.

31. By way of example, a patient was supposed to receive 30-45 minutes of PT and 30-45 minutes of OT five (5) times a week or anywhere from 60-90 minutes of therapy per day. However, this patient would only receive just 30 minutes of *combined* therapy per day, in essence cutting their therapy time in half (or more) every day.

32. Plaintiff also noticed that Defendant's OTs and PTs had a purported rate of "patient refusals" that grossly exceeded industry norms (and any other long term care facility Plaintiff had worked at in her decades of long-term care), which was clearly indicative that Defendant's staff were incorrectly labelling service codes.

33. For example, OTs and PTs would frequently put "Patient Refused" as a service code for therapy sessions, when in fact patients were not refusing services. Defendant's staff was falsely claiming that patients refused, were "too tired" or "were not appropriate for therapy because they were out of their mind." This was being done to complete other non-billable work (*e.g.* documentation, billing, reporting).

34. The aforementioned negligent treatment led to insurance providers and Medicare cutting patients from therapy for "lack of progress" before they were medically ready. Patients (and their families) continuously questioned and complained about these practices.

35. Plaintiff also continually questioned Defendant's treatment of patients as it often fell outside of Medicare best practice guidelines.

36. By way of example only, one female patient was found by a social worker on the floor in her bathroom with her wheelchair outside of the bathroom. At morning meeting the social worker reported this and questioned as to why the patient did not have non-skid socks on or shoes. Nobody from the patient's family was notified.

37. When Plaintiff mentioned that a patient should be screened after a fall of this nature, she was screamed at by Defendant's Director of Nursing, Sheila Keyser ("Keyser"), who yelled at Plaintiff that they "do things our way" and "if we don't think its necessary to evaluate a patient because she has dementia and fell on the bathroom floor then you will not evaluate."

38. Plaintiff pushed back and asked what was the point of therapy and Keyser again yelled at Plaintiff, "**you will do things our way** we may take your evaluation into consideration, but ultimately the decision is ours if we want a patient to be picked up for therapy or not if we think they're not appropriate then they won't be picked up."

39. Plaintiff also raised concerns that patients were, *inter alia*, being left in soiled garments, being left in bed for excessive amounts of time, were not being given proper evaluations and that patients with dementia were not getting therapy, because Defendant's practice was that dementia patients were "not appropriate for therapy."

40. In response to her complaints of patient neglect and elder abuse, Plaintiff was told to be quiet and that she was "rocking the waters."

41. On multiple occasions, Plaintiff observed, reported, and repeatedly complained to Nussbaum and Keyser about these aforementioned examples of illegal billing fraud and patient safety concerns/neglect immediately upon observing them.

42. However, her complaints and attempts to report were met with blatant harassment and abject indifference.

43. For example, Keyser, and other management, frequently yelled at and belittled Plaintiff, labeled her as "argumentative," told her she "did not know what she was doing," and told her, "**we make the decisions around here not [you]. We run the show, what we say goes.**"

44. On or about August 28, 2025, in a meeting with Nussbaum to discuss her aforementioned complaints further, Plaintiff was again told by Nussbaum that she "didn't know what [she] was talking about."

45. Plaintiff quietly and respectfully ended the meeting, stating that she refused to engage in illegal and fraudulent billing practices.

46. The very next day, Nussbaum terminated Plaintiff's employment telling her that she was "not a good fit" for Defendant.

47. Pursuant to 31 U.S.C. § 3730(h)(1), an individual may pursue a retaliatory termination claim (via private civil action) under the False Claims Act ("FCA") if "discharge" is because the individual refused to participate in fraudulent practices, or took any "efforts to stop one or more violations" of applicable laws.

48. Defendant substantially and unlawfully depleted federal government funding through Medicare and Medicaid by committing billing fraud and billing for services not rendered or not medically necessary and altering month end reports.

49. If not for Defendant's billing fraud, individuals would not have spent federal funding within Defendant (by use of its facilities); this is of course fraud upon the federal government, as explained more below.

50. Plaintiff was terminated for: (a) refusing to be complicit in state and federal violations of laws; (b) reporting, complaining about, and attempting to stop FCA and other

Medicare and Medicaid related violations by Defendant; and (c) reporting, complaining about, and attempting to stop negligent and abusive treatment of older adult patients.

## COUNT I
### Violations of the False Claims Act ("FCA")
### (Retaliatory Termination)

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Plaintiff was terminated by Defendant for reporting activities in violation of the False Claims Act ("FCA") and for engaging in FCA protected activity.[2]

53. Defendant's actions of terminating Plaintiff's employment constitutes unlawful retaliation in violation of the FCA.

## COUNT II
### Violations of Pennsylvania Common Law
### (Wrongful Termination)

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. It is clearly prohibited in this Commonwealth to terminate an employee for refusing to commit criminal acts. *See. e.g., Levito v. Hussman Food Service Co. Victory Refrigeration Div.*, WL 1426 (E.D. Pa. 1990); *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699, 702 (3rd

---

[2] Protected conduct" includes "investigation for, initiating of, testimony for, or assistance in" a FCA suit. 31 U.S.C. § 3730(h). Further, the Third Circuit has also noted that case law indicates that "the protected conduct element . . . does not require the plaintiff to have developed a winning qui tam action . . . It only requires that the plaintiff engage[ ] in acts . . . in furtherance of an action under [the False Claims Act]." . . . Under the appropriate set of facts, these activities can include internal reporting and investigation of an employer's false or fraudulent claims . . . ("[It] would [not] . . . be in the interest of law-abiding employers for the [False Claims Act] to force employees to report their concerns outside the corporation in order to gain whistleblower protection. Such a requirement would bypass internal controls and hotlines, damage corporate efforts at self-policing, and make it difficult for corporations and boards of directors to discover and correct on their own false claims made by rogue employees or managers.") *Hutchins v. Wilentz*, 253 F.3d 176, 187 (quoting *U.S. ex rel. Yesudian v. Howard University*, 153 F.3d 731, 739-40, 332 U.S. App. D.C. 56 (D.C. 1998)).

Cir.1988); *Shaw v. Russel Trucking Line, Inc*., 542 F.Supp. 776 (W.D.Pa.1982); *Dugan v. Bell Tel. of Pennsylvania*, 876 F.Supp. 713, 725 (W.D.Pa.1990).

56. If Plaintiff knowingly participated in billing fraud that was civilly and criminally punishable, she would have been complicit in perpetuating such illegalities and concealing such actions. Plaintiff was thus required to both oppose and stop any such illegalities.

57. Further, pursuant to 18 Pa. C.S. § 4104(a): "A person commits a misdemeanor of the first degree if, knowing that he has no privilege to do so, he falsifies, destroys, removes or conceals any writing or record, or distinguishing mark or brand or other identification with intent to deceive or injure anyone or to conceal any wrongdoing." Plaintiff refused to falsify or conceal patient medical records as set forth herein as doing so would constitute a criminal act.

58. Plaintiff was terminated by Defendant for refusing to participate in an unlawful scheme in violation of state and federal laws.

## COUNT III
### Violations of the Older Adults Protective Services Act ("OAPSA")
### (35 P.S. §§ 10225.101 *et seq.*)
### (Retaliatory Action / Intimidation)

59. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60. Plaintiff was an employee of Defendant, a "facility" or facilities under the Older Adult Protective Services Act 35 P.S. § 10225.103, as this term has been defined.

61. 35 P.S. § 10225.302 states that "[a]ny person having reasonable cause to believe that an older adult is in need of protective services may report such information to the agency which is the local provider of protective services. . . ."

62. Due to ongoing safety violations, as discussed herein, Plaintiff reported to her supervisors that older adults were subject to neglect and were in need of protective services.

63. Plaintiff was terminated shortly after making the aforesaid reports of neglect to her supervisor under pretextual circumstances.

64. 35 P.S. § 10225.302(c) clearly states that "[a]ny person making a report or cooperating with the agency . . . shall be free from any discriminatory, retaliatory or disciplinary action by an employer or by any other person or entity . . . [and] [a]ny person who violates this subsection is subject to a civil lawsuit by the reporter wherein the reporter . . . shall recover treble compensatory damages, compensatory and punitive damages . . . ."

65. 35 P.S. §§ 10225.302(c.1) (a subsection of 35 P.S. § 10225.302(c)) further states that "[a]ny person . . . with knowledge sufficient to justify making a report or cooperating with the agency . . . shall be free from any intimidation by an employer or by any other person or entity. Any person who violates this subsection is subject to civil lawsuit by the person intimidated . . . wherein the person intimidated . . . shall recover treble compensatory and punitive damages . . . ."

66. Defendant violated 35 P.S. §§ 10225.302(c.1) because it intentionally retaliated against Plaintiff by terminating her as a way to intimidate her because she had knowledge that Defendant's employees committed acts of abuse against consumers of Defendant (which would have been sufficient to justify her making a report to an appropriate outside agency on aging).

67. As a consequence of Defendant's violations of the Adult Protective Services Act, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B.  Plaintiff is to be awarded punitive, treble, and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.  Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.  Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.  Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: December 4, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

|  |  |  |
|---|---|---|
| Michele Millar | : | CIVIL ACTION |
| v. | : | |
| Northeast SNF Operations, LLC d/b/a Bryn Mawr Village | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.        ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)        ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        (x)

| 12/4/2025 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

**RELATED CASE IF ANY:** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply?  Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

A. *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  *see certification below*
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

B. *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (*Please specify*):_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MILLAR, MICHELE

**DEFENDANTS**
NORTHEAST SNF OPERATIONS, LLC D/B/A BRYN MAWR VILLAGE

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [X] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FCA (31USC3730)

Brief description of cause:
Violations of the FCA, PA common law(s) and OAPSA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 12/4/2025

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____